UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CR-229-JPB-RDC |
| | ) |
| CHARLES DUNN, | ) |
| Defendant. | ) |

## **DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DETENTION (DOC. 62)**

The government has moved to detain Mr. Dunn pending trial.  (Doc. 62.)  Mr. Dunn opposes this request and hereby files this memorandum and attached letters in support of his request for pretrial release.  Mr. Dunn has lived in Atlanta since 2015. If released, he will live with his wife of 31 years.  His sister and many of his friends also live in Atlanta.  He is not a risk to flee the Northern District if released.  As the attached letters show, Mr. Dunn is also not a danger to the community; he has had a positive impact on many people as an author and as a motivational speaker.  Any concerns the Court has about Mr. Dunn can be mitigated through conditions imposed pursuant to the Bail Reform Act.

Mr. Dunn intends to present additional information at the hearing on July 17, 2023.

## I.    APPLICABLE LAW

Pursuant to the Bail Reform Act of 1984, when determining whether a defendant should be detained pending trial, a court must consider the following factors:

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person; and,

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Other courts have held that the weight of the evidence is the least important factor.  *See United States v. Motamedi*, 767 F.2d at 1408 (9th Cir. 1985) ("[T]he weight of the evidence is the least important of the various factors" as "the statute neither requires nor permits a pretrial determination that the person is guilty."); *United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) ("Courts generally consider the Weight Factor as the least important of the Factors."). Further, the statue requires only "reasonable assurance," and not a "guarantee." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985); *United States v. Djoko*, No. CR19-0146, 2019 U.S. Dist. LEXIS 170496, 2019 WL

4849537, at *5 (W.D. Wash. Oct. 1, 2019) (conditions of release cannot guarantee defendant's appearance but the standard under § 3142(g) is reasonable assurance); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees").

The defendant can be detained only if the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Clear and convincing evidence is required to support a finding that no condition or combination of conditions will reasonably assure the safety of others or the community. 18 U.S.C. §3142(f)(2); *see id.* The relevant inquiry is whether "an arrestee presents an identified and articulable threat to an individual or the community." *United States v. Salerno*, 481 U.S. 739, 751, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). The government meets the "clear and convincing" standard only when it "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable'." *See Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984); *United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) ("Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and

weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.").

Where a defendant has been charged with a violation of the Controlled Substances Act punishable by 10 years or more imprisonment, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(A). The presumption is evidence to be considered with all the other evidence in the record, but it does not affect the ultimate burden of proof, which remains on the Government. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Even with a rebuttable presumption in place, the government always bears the burden of showing that no conditions can be crafted to ensure the defendants appearance in court. *See United States v. Jackson*, 845 F.2d 1262, (5th Cir. 1988) (noting that the rebuttable presumption attached but that "[w]hether the government carried its burden, even with the presumption, of establishing the need to detain *Jackson* prior to trial is a much more difficult question.").

The *Jackson* court explained:

> the government cannot reasonably argue that the § 3142(e) presumption, coupled with the allegations of the indictment against Jackson, are alone sufficient to satisfy § 3142(g). If this were so, there would be no need for Congress to have specified "the weight of the evidence against a person" as a separate factor for the district court to consider in evaluating the risk of the flight posed by the defendant.

*Jackson*, 845 F.2d at 166.

The defense bears only "a light burden of production" to rebut the presumption, and even "an unrebutted presumption is not, by itself, an adequate reason to order detention." *United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021). The defendant's burden of production regarding this issue is "not a heavy one." *See also United States v. Stricklin*, 932 F.2d 1353 (10th Cir. 1991) ("The defendant's burden of production is not heavy, but some evidence must be produced.").

Mr. Dunn presents the attached letters of support to show that he is neither a danger to the community nor a flight risk.  Although he does have prior convictions, he has turned his life around.  He is an author and a motivational speaker who has spoken to community groups and made numerous television appearances as he has helped to inspire others.  He has many supporters in his family and in his community who will be with him through this pretrial process and who will ensure that he attends court when required and that he follows the rules outlined by this Court.

## II.    NOTHING IN THE BAIL REFORM ACT, INCLUDING THE REBUTTABLE PRESUMPTIONS, MODIFIES OR LIMITS MR. DUNN'S PRESUMPTION OF INNOCENCE.

"18 U.S.C. § 3142 does not authorize detention because it is time for [] a defendant to start 'doing his time' or because he deserves to be locked up immediately due to his offense conduct."  *United States v. Roberson*, 547 F. Supp. 3d 560 (N.D. Tex. 2021).  As this Court knows, nothing in the Bail Reform Act

modifies or limits a defendant's presumption of innocence.  18 U.S.C. § 3142(j).  As

the *Roberson* court noted:

> There is a difference under the Bail Reform Act between (1) the universe of people whom prosecutors and law enforcement agents consider to be "bad men"— or have probable cause to believe are involved with or connected to criminal activity that may be particularly repugnant or traumatizing or scary — and (2) the universe of people whom the governing legal standards consider to be, even with restrictive conditions, too dangerous going forward after arrest to be released while their cases are pending.  There is at least not a complete overlap.  And the pertinent question is whether even a "bad man" can be subjected to conditions of release that will reasonably assure (not guarantee) that he will not engage in harmful or illegal conduct in general or toward a specific person — and that he will show up to court and for other court-obligations as required — if he is released.  *See United States v. Ladd*, No. 3:18-cr-100-L, 2020 U.S. Dist. LEXIS 190918, 2020 WL 6083009, at *1-*2 (N.D. Tex. Oct. 15, 2020).

*Roberson*, 547 F. Supp. 3d at 566.

Mr. Dunn continues to enjoy the presumption of innocence and detaining him

at this point will severely hamper his ability to meet with his lawyer and to

effectively fight his case.  *See Stack v. Boyle*, 342 U.S. 1, 5, 96 L. Ed. 3, 72 S. Ct. 1

(1951) ("Unless the right to bail before trial is preserved, the presumption of

innocence, secured only after centuries of struggle, would lose its meaning.")); *see*

*also United States v. Riccardi,* 2002 U.S. Dist. LEXIS 11919, 2002 WL 1402232, at

*1 (D. Kan. 2002) ("By its very language, the Act demonstrates its favorable

inclination toward pretrial release of federal criminal defendants."); *United States v.*

*DeBeir,* 16 F. Supp. 2d 592, 593 (D. Md. 1998) ("The [Act] favors release of defendants awaiting trial.") (*citing Byrd,* 969 F.2d at 109).

There is absolutely no indication that Mr. Dunn will attempt to commit crimes while on release, flee the district, or otherwise violate any bond conditions. Any concerns this Court has about Mr. Dunn can be mitigated through conditions including the use of house arrest, a GPS ankle monitor, frequent reporting, location restrictions to this district, or any other condition the Court may deem appropriate. As one magistrate court in Florida recently explained:

> even if there is a risk of nonappearance and/or a risk of danger to the community, ***detention is only warranted if those risks cannot be sufficiently mitigated by conditions of release***. And, those risks need not be mitigated completely. A person cannot be detained if there are conditions that would *reasonably assure* their appearance and the safety of the community. The "reasonably assure" standard reflects that Congress recognized there would be circumstances where, despite conditions of release, a defendant would nevertheless fail to appear as required or would endanger the safety of another. ***This standard, no doubt, is intended to minimize the chance that a person will be wrongfully detained***. Given the choice, at the margin, of releasing a dangerous person or detaining a non-dangerous one, Congress chose the former. The Bail Reform Act of 1984 requires this Court to accept that risk. Put differently, the Court would not be complying with Congress' intent if it detained a defendant because release conditions could not *ensure* or definitively *assure* the defendant's appearance and the safety of the community. A defendant is entitled to be released even if there is a residual (but not unreasonable) risk of non-appearance or danger to the community.

*United States v. Buford*, 2022 U.S. Dist. LEXIS 94507 (S.D. Fla May 10, 2022) (releasing defendant with prior felony convictions where cocaine and firearms were

7

found at arrest because government could not show that conditions or release are not adequate to reasonably assure the safety of the community).

Conditions can and should be crafted here to ensure compliance with the Bail Reform Act.

## III.   MR. DUNN SHOULD BE RELEASED PENDING TRIAL IN THIS CASE.

Since the implementation of the Bail Reform Act of 1984, courts have somehow gone from interpreting the act to require detention only for the worst and most dangerous offenders to detaining most defendants in drug cases.  Despite the Supreme Court's mandate that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception,"[1] the judicial system continues to lock people away from their families *for years* at a time prior to granting them any opportunity to contest the charges against them at trial.  As noted in the attached USA today article and the underlying University of Chicago law school study, "jailing has a cascading effect on an arrestee's life from even just a few days behind bars, which may cost them their job, custody of their child, and even impact their housing, as well as make it more likely an arrestee is convicted, sentenced to a longer term and faces mandatory minimums." *See* Tami Abdollah, *Study: Federal Magistrates, Prosecutors Misunderstand Bail Law, Jailing People Who Should Go*

---

[1]   *United States v. Salerno*, 481 U.S. 739, 755 (1987).

*Free*, USA TODAY (Dec. 7, 2022); Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* (2022). Ms. Siegler told USA Today, "Part of what's happening and why people are being locked in jail at really high rates is people aren't paying attention to what the law requires."

A recently New York times article also addressed the mass detention issue, explaining that:

> While the Supreme Court famously said that freedom should be the default for people awaiting trial, current law directs judges to assume that people charged with certain crimes — including most drug crimes — will flee and endanger the community if released. That exception has now swallowed the rule, becoming a built-in bias for incarceration that feeds the federal system's colossal detention rates and stark racial disparities.
>
> Nearly 40 years ago, Congress created the presumption of detention to lock up only the "worst of the worst" offenders before trial, but in practice it deprives nearly every person awaiting trial in a federal drug case of their liberty. The presumption of detention "has become an almost de facto detention order" for 93 percent of all federal drug cases, expanding far beyond its original purpose. It also creates racial disparities, as Black and Latino individuals are jailed in drug cases at a higher rate than white individuals. When it first went into effect, fewer than one in four people were jailed pending trial. Now, with the presumption as a driving force, federal pretrial detention rates have skyrocketed, with three in four people jailed before trial — a 75 percent detention rate that falls disproportionately on people of color. This is mass incarceration in action.

Alison Siegler & Kate Harris, *How Did the Worst of the Worst Become 3 Out of 4?,* N.Y. TIMES (Feb. 24, 2021) (attached).

9

This case should not be one in a continuing pattern of unnecessary mass detention prior to trial. Mr. Dunn asserts that detaining him prior to trial would be contrary to the requirements of the Bail Reform Act. The government cannot meet its burden of showing that no conditions can be crafted to ensure Mr. Dunn's appearance in court and the safety of the community. For that reason, he should be released pending trial.

Respectfully submitted this 16th day of July 2023

Respectfully submitted,

*s/Saraliene S. Durrett*
SARALIENE S. DURRETT
GA Bar No. 837897

1800 Peachtree Street
Suite 300
Atlanta, GA 30309
(404) 433-0855
ssd@defendingatl.com

10